THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -

LILLIAN ROBERTS, as Executive Director, DISTRICT COUNCIL 37,
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, and its Affiliated Locals, DENNIS IFILL as
President of LOCAL 1359 (Rent Regulation Services Unit Employees);
ESTHER TUCKER, as President of LOCAL 384; JAMES B. CULLEN,
as Administrator of LOCAL 2054; MAF MISBAH UDDIN, as President
of LOCAL 1407; ROBERT AJAYE, as President of LOCAL 2627;
BEHROUZ FATHI, as Acting President of CIVIL SERVICE
TECHNICAL GUILD – LOCAL 375; ERIC LATSON, as President of
LOCAL 1597; CHARLES FARRISON, as President of LOCAL 1797;
MARK ROSENTHAL, as President of LOCAL 983; KYLE SIMMONS,
as President of LOCAL 924; MANUEL A. ROMAN, Jr., as President of
Local 1087; and CLIFFORD KOPPELMAN, as President of Local 1070,

Civil Case No.:
10-cv-0569
(LEK/DRH)

Plaintiffs,

- against -

DAVID A. PATERSON, as Governor of the State of New York;
NEW YORK STATE ASSEMBLY; NEW YORK STATE SENATE;
JONATHAN LIPPMAN, as Chief Judge of the New York State
Unified Court System; NEW YORK STATE DIVISION OF
HOUSING AND COMMUNITY RENEWAL; THE CITY UNIVERSITY
OF NEW YORK (Matthew Goldstein, as Chancellor of the City University
of New York); and THE STATE OF NEW YORK,

Defendants.

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THE APPLICATION FOR PRELIMINARY INJUNCTION

MARY J. O'CONNELL, GENERAL COUNSEL
Erica C. Gray-Nelson, of Counsel
Bar Roll No. (pending)
District Council 37, AFSCME, AFL-CIO
125 Barclay Street, 5th Floor
New York, New York 10007
Tel. No.: (212) 815-1450

On the Brief:
Erica C. Gray-Nelson, Esq.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ………………………………………………...........4

STATEMENT OF FACTS ……………………………………………………...........5

A.   Failure to Pay Negotiated Salary Increases to Rent Regulation Services Employees…..6

B.   Failure to Contribute to the Employee Benefit Fund for Rent Regulation

    Services Employees …………………………………………………………………….8

C.   The Unified Court System's Failure to Contribute to the Employee Benefits Fund ……9

D.   DC 37 Represented Employees of CUNY ………………………………………………...9

E.   Furlough are Not Authorized by the Parties' Agreements ……………………………10

F.   Impact of Contract Impairments ……………………………………………………….12

ARGUMENT

    POINT I

    THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION BECAUSE
    THE FACTS PATENTLY DEMONSTRATE THAT DEFENDANTS HAVE
    SUBSTANTIALLY IMPAIRED PLAINTIFFS' NEGOTIATED COLLECTIVE
    BARGAINING AGREEMENTS AND SIGNIFICANT AND IRREPARABLE
    HARM WILL LIKELY RESULT …………………………………………………..12

        i.    Defendants' Unconstitutional Impairment of Plaintiffs' Contracts Constitutes
              a Deprivation of Plaintiffs' Rights and Will Severely and Irreversibly
              Harm Plaintiffs' Represented Members...………………………………………13

        ii.   Plaintiffs are Likely to Succeed on the Merits Because the Impairments are
              Substantial and are Not Reasonable or Necessary for the General Welfare of
              the State's Citizens……………………………………………………………..16

              a.   The Impairment is Substantial …………………………………………...16

              b.   Defendants' Denial of Plaintiffs' Contracted-For Benefits and
                   the Imposition of the Furlough Law Do Not Further a Legitimate Public
                   Purpose……………………………………………………………………18

2

c.   Defendants' Denial of Plaintiffs' Contracted-For Benefits and the Imposition of the Furlough Law is Neither Reasonable Nor Necessary to Achieve a Legitimate Public Purpose..........................19

d.   The Balance of Hardship Weighs in Favor of the Plaintiffs................21

CONCLUSION.................................................................................................22

## PRELIMINARY STATEMENT

Plaintiffs Lillian Roberts, as Executive Director of District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, Dennis Ifill, as President of Local 1359, Esther Tucker, as President of Local 384, James B. Cullen, as Administrator of Local 2054, Maf Misbah Uddin, as President of Local 1407, Robert Ajaye, as President of Local 2627, Behrouz Fathi, as Acting President of Local 375, Eric Latson, as President of Local 1597, Charles Farrison, as President of Local 1797, Mark Rosenthal, as President of Local 983, Kyle Simmons, as President of Local 924, Manuel A. Roman, Jr., as President of Local 1087 and Clifford Koppelman, as President of Local 1070 (hereinafter "DC 37" or "Plaintiffs"), on behalf of State employees represented by the respective local unions, bring this action to challenge on constitutional grounds: 1) defendants' decision to impose an involuntary, unpaid furlough, which would result in a twenty percent (20%) reduction of the wages for hundreds of  Plaintiffs' represented members; 2) defendants' failure to contribute to Plaintiffs' employee benefit funds, which will cause the funds to become insolvent and unable to make required and necessary payments for various health-related benefits; and 3) defendants' decision to withhold for an indefinite period of time wage increases that were due on March 25, 2010 and April 1, 2010 for Plaintiffs' represented members.

On May 7, 2010, defendant Governor David A. Paterson introduced an emergency appropriation bill, which was passed by the New York State Legislature on May 10, 2010.  This law imposes an involuntary furlough on Plaintiffs' bargaining unit members by subjecting them to one day a week of unpaid wages, equivalent to a 20% loss of pay, beginning the week of May 17, 2010, and to be continued until the State passes its budget.  In addition, the emergency bill

4

fails to include negotiated salary increases and payments for contributions to certain benefit funds on behalf of Plaintiffs' represented members.

Plaintiffs and the defendants are parties to several collective bargaining agreements. None of these agreements authorize defendants to institute unpaid furloughs or to withhold payments for salary increases and contributions for payments to employee benefit funds. Thus, defendants' acts unconstitutionally impair Plaintiffs' contracts and, if upheld, will result in a substantial loss of wages and necessary health benefits for Plaintiffs represented members. Therefore, pursuant to F.R.C.P. Rule 65, Plaintiffs seek a temporary restraining order and preliminary injunction against the defendants' constitutional violations. Further, plaintiffs will demonstrate that they are likely to succeed on the merits and, absent the injunctive relief, they will be irreparably harmed.

### STATEMENT OF FACTS

Plaintiff DC 37 is an amalgam of 55 local unions representing approximately 120,000 employees in various agencies, authorities, boards and corporations in the City of New York, including approximately 345 employees of defendant NYS Division of Housing and Community Renewal ("DHCR"), 7,800 bargaining unit members at senior colleges of defendant City University of New York ("CUNY") and 1,420 members employed by defendant New York State Unified Court System ("UCS"). (Trester Affidavit, ¶4; Paskin Affidavit ¶6; Koppelman Affidavit, ¶1)

Defendant David A. Paterson is the Governor of the State of New York (hereinafter "Governor Paterson") and is responsible for the administration of the Executive Branch of New York State pursuant to N.Y. Constitution Article IV, § 1. (Complaint, ¶17)

5

Defendants New York State Assembly and New York State Senate, pursuant to N.Y. Constitution Article III, § 1, comprise the two houses of the New York State Legislature, in which the legislative power of the State vests. (Complaint, ¶18)

Defendant State of New York is maintained pursuant to the State Constitution and is organized into various agencies for the purpose of providing services to citizens of the State of New York, with its principal office is located at the State Capitol, Albany, New York. Defendant State of New York is the public employer of hundreds of DC 37 represented employees.

Defendant DHCR is a State agency subject to all statutes, laws, bills or amendments under the jurisdiction of the State of New York. (Complaint, ¶20) It employs approximately 345 DC 37 represented members in its Rent Regulation Services unit. (Trester Affidavit, ¶4)

Defendant UCS employs over 1,400 members represented by DC 37 affiliate, Local 1070 (Koppelman Affidavit, ¶1)

Defendant CUNY is an independent system of higher education created pursuant to the provisions of the New York Education Law to provide post-secondary education in New York City. (Complaint, ¶21) It employs thousands of DC 37 represented employees in various titles. (Paskin Affidavit, ¶6)

A.    Failure to Pay Negotiated Salary Increase to Rent Regulation Services Employees

Pursuant to Article 14 of the New York State Civil Service Law, DC 37 is recognized as the exclusive representative for collective negotiations and contract administration for approximately 345 employees of defendant DHCR's Rent Regulation Services employees. DC 37 and DHCR are parties to a collective bargaining agreement, in effect for the period April 1,

2007 to March 31, 2011 ("DHCR Agreement"). (Trester Affidavit, ¶5, Exhibit A)  The DHCR Agreement was executed by DC 37 and the State on July 22, 2008.

Article 7 of the DHCR Agreement provides that salary increases shall be implemented as follows: three percent (3%) in April 2007 (retroactive), three percent (3%) in April 2008, three percent (3%) in April 2009 and four percent (4%) in April 2010, compounded.  For the years 2007, 2008 and 2009, the three percent (3%) wage increases were implemented on the dates as set forth in the Agreement.  (Trester Affidavit, ¶7)  The DHCR Agreement provide for a four percent (4%) salary increase beginning on April 1, 2010.  In April 2010, the Governor failed to introduce legislation to implement the contractual four percent (4%) salary increase contained in the DHCR Agreement.  (Trester Affidavit, ¶8)  There was no budget in place by April 1, 2010, for fiscal year 2010-2011, and therefore the Governor and the Legislature have passed short-term emergency appropriations bills authorizing specific funds to keep the State functioning. These emergency appropriations bills have included funding for salaries for State employees.

On or about April 12, 2010, the Governor proposed Program Bill Number 234, authorizing the payment of salaries for Executive Branch employees including employees covered by the DHCR Agreement. (Trester Affidavit, ¶9, Exhibit B)  However, since the Institutional and Administrative payrolls contain a two-week salary lag, Program Bill Number 234 covered the first pay period of time during which the four percent (4%) salary increase for fiscal year 2010 was to be reflected in the paychecks of State employees.  Program Bill 234, enacted as Chapter 35 of the Laws of 2010, stated in relevant part that the salaries paid to State employees "shall not be based on the amounts applicable pursuant to [subparagraphs of] . . .Section 130 of the Civil Service Law . . .insofar as such subparagraphs provide for a general salary increase of four percent." (Trester Affidavit, Exhibit B)

7

Article VII, Section 4 of the New York State Constitution states in relevant part, "The Legislature may not alter an appropriation bill submitted by the Governor except to strike out or reduce items therein." Pursuant to Article VII, Section 4 of the New York State Constitution, the Legislature was restricted to either approving or rejecting, in the entirety, the Governor's April 12, 2010 budget allocation bill that omitted the four percent (4%) salary increase. Thus, the Legislature approved the Program Bill No. 234 on April 12, 2010. (Trester Affidavit, ¶9, Exhibit C)

Each week since April 12, 2010, the Governor has introduced, and the Senate and Assembly have approved, program bills funding Executive Branch employees' salaries, containing the same language of the April 12, 2010 bill, omitting the four (4%) salary increase required by the DHCR Agreement. (Trester Affidavit, ¶9)

B.    Failure to Contribute to the Employee Benefit Fund for Rent Regulation Services Employees

The DHCR Agreement also provides for contributions on behalf of each covered employee to the DC 37 Health and Security Benefit Fund for negotiated health benefits. (Trester Affidavit, ¶10; Complaint, ¶40)  The Governor has failed to include in his emergency appropriations bills the funds necessary for DHCR to make its first quarterly Employee Benefit Fund contributions that was due April 1, 2010, and as a result such contributions have not been made. (Trester Affidavit, ¶11)

The DHCR Agreement also contains, as an appendix, specific salary schedules denoting the fixed salaries negotiated for employees subject to the Agreement, by grade level and years of service for each year covered by the Agreement. Employees' salaries are governed by, and employees are paid, a base amount of salary denoted on the salary schedule for their grade level

8

and years of service.   Article 7 of the DHCR Agreement specifically refers to the salary schedules.  (Trester Affidavit, Exhibit A)

C.      The Unified Court System's Failure to Contribute to the Employee Benefits Fund.

Defendant UCS and DC 37 are parties to a collective bargaining agreement covering employees in the Court, County and Department of Probation unit ("UCS Agreement"), in effect for 2007 through 2011.  (Koppelman Affidavit, ¶5, Exhibit A). As previously stated, UCS employs over 1400 DC 37 bargaining unit members.   The UCS Agreement provides for contributions to the Employee Benefits Fund for negotiated dental and optical benefits to the DC 37 represented employees.  (Koppelman Affidavit, ¶6, Exhibit A; Complaint, ¶48)

The Governor failed to include in his emergency appropriations bills the funds necessary for UCS to make its first quarterly Employee Benefit Fund contributions that was due April 1, 2010, and as a result such contributions have not been made.  (Koppelman Affidavit, ¶7) Due to defendants' failure to make or cause to be made contributions to the Employee Benefits Fund, the Fund must rely on its reserves to continue to pay benefits.  Once the reserves are depleted, which will occur on or about July 1, 2010, the Fund will not have sufficient funds to meet its obligations to pay benefits under the plan, including payments to providers. (Koppelman Affidavit, ¶¶8, 9)

If payments to providers are ceased, they will sever their relationship with the Fund and will likely not renew such relationships, even when contributions are reinstated and continued, due to the Fund's perceived instability, resulting in substantial and irreparable injury to the Fund.

D.      DC 37 Represented Employees of CUNY

DC 37 is also recognized under the Taylor Law as the exclusive representative for purposes of collective negotiations and contract administration for approximately 7,800

9

employees of Defendant CUNY. DC 37 and CUNY are parties to three collective bargaining agreements: 1) the 2006-2009 Agreement covering Custodial, Stores-Stock and Security Employees ("Blue Collar Contract"); 2) the 2006-2009 Agreement covering Clerical, Custodial, and Related Employees of the Educational Opportunity Centers of Brooklyn, Manhattan, Queens and the Bronx ("E.O.C. Contract"); and 3) 2006-2009 Agreement covering Clerical, Administrative and Professional Employees of the Classified Service of the City of University of New York, and 2007-2010 Agreement covering the City University of New York and the New York State Nurses Association ("White Collar Contract"). (Paskin Affidavit ¶¶4, 5, Exhibits A, B and C)

Defendants State of New York, Governor Paterson or their representatives, do not participate in contract negotiations between DC 37 and CUNY. (Paskin Affidavit, ¶10)

E.    Furloughs are not Authorized by the Parties' Respective Agreements

The DHCR, Blue Collar, E.O.C. and White Collar Agreements do not allow for furloughs of employees in the bargaining units or for a reduction of their salaries. (Trester Affidavit, Exhibit A; Paskin Affidavit, Exhibit A, B and C) In addition, these Agreements do not prevent DC 37 represented State employees from using their accrued leave credits to offset absences from work. (Trester Affidavit, ¶20; Paskin Affidavit, ¶ 15)

On May 7, 2010, Defendant Governor Paterson submitted an emergency appropriations bill, Program Bill 250, which directs that DC 37 represented Executive Branch employees and DC 37 represented employees of CUNY senior colleges be furloughed one day per week for an unknown number of weeks. (Trester Affidavit, ¶13, Exhibit D; Paskin Affidavit, ¶10)

On May 10, 2010, the Legislature voted to adopt the bill and the Governor signed it into law. (Trester Affidavit, ¶15; Paskin Affidavit, ¶11)   As a result of the furlough, DC 37

10

represented employees will not receive the amount of salary for the 2010-2011 year that corresponds to their grade level and years of service as negotiated by DC 37 and set forth on the salary schedules in the Agreements. (Trester Affidavit, ¶16; Paskin Affidavit, ¶12)  The furlough law also applied only to unionized workers employed by the Executive Branch of the State of New York and CUNY.  (Trester Affidavit, Exhibit D)

Furthermore, each Agreement contains an attendance and leave provision that provides for the holiday, vacation and sick leave accruals for employees covered by the agreement.  The leave provisions permit employees under certain conditions to utilize accrued paid vacation and sick time during times the employees are on leave from their employment with the State. (Trester Affidavit, ¶20, Exhibit A; Paskin Affidavit, ¶15, Exhibits A, B and C) The emergency appropriations bill approved by the Legislature on May 10, 2010, prohibits Executive Branch and CUNY employees form utilizing their contractual earned and accrued paid leave time to cover loss of pay for the days they are to be furloughed.  (Trester Affidavit, ¶21; Paskin Affidavit, ¶15)

DC 37 members will thus have no way to offset the substantial loss of income they will incur as a result of the involuntary furlough.  (Trester Affidavit, ¶22; Paskin Affidavit, ¶15)  The Governor's imposed furlough will also affect retirement system service credit for all furloughed employees, as well as the final average salary computations for those DC 37 represented employees who intend to retire in the 2010-2011 fiscal year, or within two years thereafter, thereby resulting in reduced pension benefits over the remainder of the employees' lives. (Trester Affidavit, ¶23; Paskin Affidavit, ¶16)

Furthermore, the furlough is being imposed upon DC 37 represented CUNY employees even though CUNY is not a part of the State's Executive Branch. (Paskin Affidavit, ¶ 10)

11

The Legislature did not make a finding in conjunction with the passage of the legislation that the State of New York was in a fiscal emergency or a crisis, or that the work week reduction imposed by the legislation was necessary to remedy a fiscal emergency or crisis.  (Trester Affidavit, Exhibit D)

F.    Impact of Contract Impairments

As a result of defendants' unconstitutional acts, plaintiffs' represented employees will suffer a significant twenty percent (20%) loss in income and will not be able to adequately meet financial responsibilities such as mortgages, rent payments, food, basic utilities, travel expenses and medical expenses, a loss of the 4% increase and the loss of certain of their health and welfare benefits. (See Affidavits of Michele Trester, David Paskin, Clifford Koppelman, Dennis Ifill, John Lafferty, Sheena Blaise, Marquita Ferguson, Ronee Skipworth, Maria Rodriguez, Joyinn Paulin, and Aduzinda Goncalves, annexed the Complaint.)

Due to defendants' unconstitutional acts, DC 37 members have suffered and will continue to suffer a deprivation of their contractual rights and benefits.  Plaintiffs have no adequate or speedy remedy at law for the unconstitutional conduct of defendants, and this action for injunctive relief is Plaintiffs' only means for securing relief.

**ARGUMENT**

**POINT I**

**THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION BECAUSE THE FACTS PATENTLY DEMONSTRATE THAT DEFENDANTS HAVE SUBSTANTIALLY IMPAIRED PLAINTIFFS' NEGOTIATED COLLECTIVE BARGAINING AGREEMENTS AND SIGNIFICANT AND IRREPARABLE HARM WILL LIKELY RESULT.**

12

In order to establish grounds for injunctive relief, a plaintiff must show that 1) irreparable harm; and 2) either likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *Citigroup Global Markets, Inc. v. BCG Special Opportunities Fund Limited*, 598 F.3d 30 (2d Cir. 2010); *Lynch v. City of New York*, 589 F.3d 94 (2d Cir. 2009); *City of New York v. Gold Feather Smoke Shop*, 597 F.3d 115 (2d Cir. 2004).

    i.    Defendants' Unconstitutional Impairment of Plaintiffs' Contracts Constitutes a Deprivation of Plaintiffs' Rights and Will Severely and Irreversibly Harm Plaintiffs Represented Members.

Article I, § 10, Clause 1, states in relevant part that, "No State . . . shall pass any . . . law impairing the Obligation of Contracts . . . ." U.S. Const. I, §10, c.1.  It is well established that a constitutional deprivation, by itself, for even a minimal period of time, constitutes irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373-375, 96 S.Ct. 2673 (1976).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984) *citing* 11A. Federal Practice and Procedure, § 2948.1, n.21 (2d. Ed.).

As such, many courts have held that a presumption of irreparable harm arises from a violation of constitutional rights. *Jolly v. Coughlin*, 76 F.3d 469 (2d Cir. 1996) (*stating* "The district court ... properly relied on the presumption of irreparable harm injury that flows from a violation of constitutional rights."); *see also Charette, v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998); *C & A Carbone, Inc. v. Town of Clarkstown*, 770 F. Supp. 848, 854 (S.D.N.Y. 1991).

Here, defendants seek to put aside legally and legitimately negotiated terms and conditions of employment for Plaintiffs represented members.    Public sector collective

bargaining agreements in New York State must comply with the Taylor Law, Civil Service Law § 204-a.1. Civil Service Law § 204-a.1 further provides that all collective bargaining agreements between public employers and employee organizations, "shall not become effective until the appropriate legislative body has given approval." N.Y. Civ. Serv. L. § 204-a.1.

The Legislature approved the DHCR Agreement execute on March 8, 2008 as required by Civil Service Law § 204-a.1. The Agreement between DC 37 and the State, approved by the New York State Legislature pursuant to the Taylor Law, provides for salary increases of four percent (4%) on April 1, 2010 for employees covered by the Agreement. The Governor was required by contract to introduce legislation, and the Legislature was required to pass legislation providing for funds to pay the four percent (4%) salary increases contained in the DHCR Agreement and previously approved by the Legislature. Civil Service Law 204-a.1 does not make the compensation sections of the Agreement conditional or subject to annual legislative appropriations.

Notwithstanding, on or about April 12, 2010, the Governor proposed and the Legislature passed the Governor's Program Bill 234, omitting the four percent (4%) increase for employees covered by Article 7 of the DHCR Agreement. Each week since April 12, 2010, the Governor has introduced and the Senate and Assembly have passed, legislation to pay DC 37 represented State employees' salaries, omitting the four percent (4%) salary increase.

The passage of successive legislative bills since April 1, 2010 that failed to provide for the four percent (4%) negotiated salary increase for DC 37 represented employees each constitutes a violation of Article I, the Contract Clause of the United States Constitution.

The DHCR Agreement also provides for quarterly financial payments by the State to the DHCR Employee Benefit Fund for each fiscal year covered by the Agreement, including fiscal year 2010-2011.

The UCS Agreement duly approved by the New York State Legislature pursuant to the Taylor Law in or around 2008 provides for financial payments by UCS to the employees' Benefits Fund quarterly during each fiscal year covered by the Agreement, including fiscal year 2010-2011.

The Governor was required by contract to introduce legislation, and the Legislature was required to pass legislation, providing for the contributions to the DHCR and UCS Benefits Funds.  Govenor Paterson has failed to propose a bill that includes funding necessary for payments to be made to the Funds as provided by the DHCR and UCS Agreements.

The failure of the Governor to propose a bill since April 1, 2010, that includes funding necessary for payments to be made to the Funds also constitutes an impairment of contract by legislative act in violation of the Contract Clause of the United States Constitution.  That defendants' acts constitute irreparable injury has undoubtedly been supported by federal courts. For example, in an analogous case concerning lag payroll, the Second Circuit noted:

> The affected employees have surely relied on full paychecks for such essentials as food and housing.  Many have undoubtedly committed themselves to personal long-term obligations such as mortgages, credit cards, car payments, and like-obligations which might go unpaid in the months that the lag payroll has its immediate impact. *Cf. Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 342 n.9; 89 S. Ct. 1820, 1823 n.9; 23 L.Ed.2d 349 (1969). "'for a poor man *** to lose a part of his salary often means his family will go without the essentials. ***'") (quoting statement of Congressman Gonzales, 114 Cong. Rec. 1833).

*Association of Surrogates (Surrogates I)*, 940 F.2d 766 (2d Cir. 1991).

15

ii.    Plaintiffs are Likely to Succeed on the Merits Because the Impairments are Substantial and are Not Reasonable or Necessary for the General Welfare of the State's Citizens.

In addition to the deprivation of Plaintiffs' contractual rights, DC 37 represented members will suffer a 20 percent (20%) reduction in their weekly compensation through defendants' imposition of an involuntary one day a week furlough. These acts substantially impair Plaintiffs' agreements with the State. To determine if a law unconstitutionally impairs contract rights, the court must evaluate: 1) whether the contract impairment is substantial and, if so, 2) does the law serve a legitimate public purpose such as a general social or economic problem and, if such a purpose is demonstrated, 3) whether the means chosen to accomplish this purpose was reasonable and necessary. *See United States Trust Co. v. New Jersey*, 431 U.S. 1, 25-26 (1977); *see also Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 367 (2d Cir. 2006).

a.    *The Impairment is Substantial*

The Second Circuit has held that a prospective freeze of a negotiated 2% salary increase is a substantial impairment. *See Buffalo Teachers*, 464 F.3d at 368. Specifically, the Court noted, "the levels at which union employees are to be compensated are the most important elements of a labor contract [and they are] the central provisions upon which it can be said they reasonably rely." *Id.* Similarly, the Court has found legislation that merely delayed 10% of an employee's bi-weekly salary, over five bi-weekly pay periods was a substantial impairment to employees faced with monthly debts payments and daily expenses for food and other necessities. *See Condell v. Bress*, 983 F.2d 415, 419 (2d Cir. 1993) (*citing Association of Surrogates and Supreme Court Reporters v. State of New York*, 79 N.Y.2d 39, 46-47 (1992)).

There is no question that the legislation substantially impairs Plaintiffs' contracts with defendants. Here, Plaintiffs represented members have not received their negotiated 4% salary

16

increase, defendants have not made required contributions to certain employee benefits funds and Plaintiffs represented employees of DHCR and CUNY stand to permanently lose a staggering 20% of their salary.  In addition, the furlough legislation will directly impact other benefits that are calculated based on number of days worked during the calendar year.  "For example, members will earn less State service time for retirement purposes, negatively impacting their pension benefits and retirement plans; and their coverage under the Family [and] Medical Leave Act…" (Trester Affidavit, ¶23; Paskin Affidavit, ¶16)

As the Affidavit of Dennis Ifill attests, Mr. Ifill has mortgage and credit card debts for which the furlough would have a tremendous impact on his financial health.  In addition, the reduction in salary will greatly reduce his pension benefits and the elimination of the 4% raise will not be factored into his final average salary for retirement purposes.   Joyinn Paulin attests that she nets $810 every two weeks.  In addition, she is a single parent who is financially responsible for her daughter and her parents.  A twenty percent (20%) reduction in her meager salary would constitute a substantial loss of income. (See Paulin Affidavit.)   Particularly distressing are situations such as Maria Rodriguez's, who earns $14, 092 as a part-time employee of defendant CUNY.  Ms. Rodriguez attests that if she loses 20% of her pay, not only would she suffer a significant loss of income but she would be ineligible for health insurance benefits. Ms. Rodriguez is extremely dependent on her health insurance benefits because, as recently as April 2010, she suffered a stroke and was hospitalized for one week. (See Affidavit of Maria B. Rodriguez)

Furthermore, select employees subject to the furlough may not offset their loss by using contractual leave credits. (Trester Affidavit, ¶ 22; Paskin Affidavit, ¶15)  Defendants intend to continue the furlough on a weekly basis until the State Budget is passed.  (Trester Affidavit,

17

Exhibit D) Therefore, Plaintiffs represented employees of DHCR and CUNY will lose 20% of their wages, without any ability to use leave credits to offset the loss.

The DHCR Agreement between DC 37 and the State specifies annual salaries for employees, which cannot be diminished by involuntary furloughs. Nevertheless, the legislation passed on May 10, 2010 that provides for an involuntary furlough of DC 37 represented State employees diminishes the annual salaries set forth in the Agreement, covering the period 2007 through 2011, between DC 37 and the State.

Similarly, the Agreements between DC 37 and CUNY establish terms and conditions of employment, including salary and wages, leave entitlement, retrenchment or layoff procedures.

Thus, the Furlough law substantially impairs these obligations by legislatively mandating a 20% reduction in weekly salary, without recourse to leave credits and without regard to the layoff and retrenchment provisions in the collective bargaining agreements.

      b.     *Defendants' Denial of Plaintiffs' Contracted-for Benefits and the imposition of the Furlough Law Do Not Further a Legitimate Public Purpose*

The Second Circuit has held that there must be a specific legislative finding that the state or a city within the state was in a state of fiscal crisis and that the welfare of its citizens was seriously threatened. *See Buffalo Teachers*, 464 F.3d at 366, 368. In approving the furlough legislation, the legislature made no such finding. (Trester Affidavit, Exhibit D) The legislation states:

> . . .the enactment of these appropriations provides sufficient authority to the comptroller for the purpose of making payments for the purposes described herein until such time as appropriation bills submitted by the governor pursuant to Article 7 of the State constitution for the support of government for state fiscal year beginning April 1, 2010 are enacted.

18

The law, which omitted Plaintiffs' members contracted for salary increases and employee benefit funds payments and which included the furlough program, was passed simply to permit the State to meet its financial obligations while the legislature continues their wrangling with the Governor over the State budget.

Evidently, the enactment of the law appears to be a blatant attempt to deny Plaintiff unions their contract rights under the guise of an alleged emergency.

    *c.*    *Defendants' Denial of Plaintiffs' Contracted-for Benefits and the imposition of the Furlough Law is Neither Reasonable Nor Necessary to Achieve a Legitimate Public Purpose*

Defendants cannot show that the enactment of the Program Bill No. 250 was reasonable and necessary to meet a stated legitimate public purpose. When a state is impairing its own contracts, it is held to a higher, or less deferential, standard in assessing whether its acts were reasonable and necessary. *See Buffalo Teachers*, 464 F.3d at 369. This is so because when the state impairs its own contracts there is an element of "self-serving" in the state's actions. *See id.* (*citing Condell*, 983 F.2d at 418). The Court noted:

> Ultimately, for impairment to be reasonable and necessary under less deference scrutiny, it must be shown that the State did not (1) 'consider impairing the . . . contracts on par with other policy alternatives' or (2) 'impose a drastic impairment when an evident and more moderate course would serve its purpose equally well,' nor (3) 'act unreasonably "in light of the surrounding circumstances."' *U.S. Trust Co.*, 431 U.S. at 30-31.

*Buffalo Teachers*, 464 F.3d at 371.

Under the test articulated in *Buffalo Teachers*, the defendants cannot show that they considered other policy alternatives before deciding to impair their contracts. The Governor and the Legislature have yet to pass a budget for the 2010-2011 fiscal year. Since there has been no

final consideration of what measures the State will ultimately enact, the defendants cannot show that other policy alternatives were considered and exhausted before they resorted to impairing their contracts with Plaintiffs.

Such alternatives may include revenue raising measures or cutting expenditures in other areas. *See generally, Buffalo Teachers*, 464 F.3d 362. The State can utilize deficit spending, eliminate other programs and/or temporary commissions or reduce mandated programs. *See Condell v. Bress*, 983 F.2d 415. Since the budget process has not been completed, defendants cannot show that these measures were considered and were either accepted or rejected.

Furthermore, with respect to DC 37 members, defendants Governor Paterson, DHCR, and UCS have not demanded either a reopening of the parties' agreements or bargaining concessions from Plaintiffs. Defendants cannot claim to have explored all alternative measures prior to enacting Program Bill No. 250. In addition, the legislation arbitrarily and irrationally applies to DC 37 represented CUNY employees, even though CUNY is not part of the State's Executive Branch.

Emergency appropriation bills enacted since April 12, 2010 do nothing to impair or limit other State contracts for goods and services, including service contracts with private contractors. (Trester Affidavit, Exhibits B, C and D) In addition, Program Bill No. 250 seeks to impair only contracts with certain labor unions and specifically exempts managerial, confidential, legislative employees and employees involved in direct care and functions necessary for the preservation of health and safety. The furlough legislation imposes a permanent loss of twenty percent (20%) salary/wages on only unionized State employees. The furlough legislation imposes no work week reduction and commensurate loss in pay on non-unionized employees, who have no collective bargaining agreements, or on other classes of employees. To the extent that

20

defendants seek to target only unionized employees, the impairment is unreasonable and clearly not necessary to further a public purpose.

The right to collectively bargain is a fundamental right under Article 1, § 17 of the New York Constitution and Article 14 of the New York Civil Service Law. Thus, the withholding of wage increases and payments for contributions to health and welfare plans for no legitimate purpose is repugnant to the rights guaranteed under Article 1, § 17 of the New York Constitution. *See Quirk v. Regan*, 148 Misc,.2d 300, 304-305 (Sup. Ct. Albany Co. 1991)

The furlough legislation thus intentionally and invidiously discriminates against Plaintiffs and all DC 37 represented employees with respect to salary/wages and other protected rights based on a wholly irrational classification. As such, the furlough law is unconstitutional in that it violates the constitutional mandate of equal protection.

    d.    *The Balance of Hardship Weighs in Favor of the Plaintiffs*

If the legislation, imposing a twenty percent (20%) reduction in wages, the loss of four percent (4%) salary increase and the lack of funding for employee benefit funds, is permitted to stand, it will have a devastating impact on many of Plaintiffs' represented employees. (See Trester Affidavit, ¶19; Paskin Affidavit, ¶14, Koppelman Affidavit, ¶¶9, 10 and the Ifill, Lafferty, Blaise, Ferguson, Skipworth, Rodriguez, Paulin, and Goncalves Affidavits) Many DC 37 members will not be able to meet their monthly debt obligations and daily basic expenses. In addition, the impact will be irreversible. Some of Plaintiffs' members who are part-time employees will lose their health benefits and will not be able to pay for necessary medical treatments or prescriptions. (Koppelman Affidavit, ¶¶6, 9)

21

Moreover, since defendants have chosen to target only certain of its employees and have failed to reach to final budget agreement, it is highly unlikely that defendants can demonstrate any credible hardship to withstand a preliminary injunction.

<u>**CONCLUSION**</u>

For all the aforementioned reasons, Plaintiffs' application for a temporary restraining order and for a preliminary injunction should be granted.

Dated: May 17, 2010
       New York, New York

                             Respectfully submitted,

                             MARY J. O'CONNELL
                             General Counsel
                             District Council 37, AFSCME, AFL-CIO
                             Attorney for Plaintiffs

                             *Erica Gray-Nelson*

                             Erica C. Gray-Nelson (Bar Roll No. Pending)
                             125 Barclay Street, 5th Floor
                             New York, New York 10007
                             Tel: (212) 815-1450
                             Fax: (212) 815- 1440
                             Email: egray-nelson@dc37.net

TO:   GOVERNOR DAVID A. PATERSON          ANDREW M. CUOMO, Esq.
      The Capitol                         Office of the Attorney General
      Albany, New York 12224              NYS Department of Law
                                          State Of New York
      NEW YORK STATE ASSEMBLY             The Capitol
      c/o Office of the Speaker           Albany, New York 12224-0341
      LOB 932                             (518) 474-7330
      Albany, New York 11248

      NEW YORK STATE SENATE               MATTHEW GOLDSTEIN
      c/o Office of the Majority Leader   Chancellor of CUNY
      Capitol Building, Room 420          City University of New York
      Albany, New York 12247              535 East 80th Street
                                          New York, New York 10075

GARY R. CONNOR
General Counsel
DHCR
Hampton Plaza
38-40 State Street
Albany, New York 12207
(866) 275-3427

JONATHAN LIPPMAN
Chief Judge of the
NYS Unified Court System
Empire State Plaza
Agency Building 4, Suite 2001
Albany, New York 12223-1450